Dr. Ulpiano F. Lopez, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Retreat State Hospital, Respondent.

Argued June 4, 1979, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

632

Joseph J. *Musto*, with him *Griffith, Aponick &
Musto*, for petitioner.

Robert E. *Kelly*, Assistant Attorney General, for
respondent.

OPINION BY JUDGE WILKINSON, JR., June 29, 1979:

Petitioner seeks review of a decision by the State
Civil Service Commission (Commission) affirming his
removal from the position of Assistant Superintendent
for Clinical Services, Mental Health, regular status at
Retreat State Hospital pursuant to Section 807 of the
Civil Service Act.[1] We affirm.

The incident leading to his removal was his alleged
action which "result[ed] in persons attending a meet-
ing in the Superintendent's Office, Retreat State Hos-
pital, on the morning of August 5, 1976, to imbibe with-
out their knowledge quantities of HALDOL, a psycho-
tropic drug." The meeting above mentioned was a
regular consultation of staff physicians with other
medical doctors from the community to discuss the
treatment of patients.

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.807
which provides: "No regular employe in the classified service shall
be removed except for just cause."

Following the August 5, 1976 meeting several persons in attendance became ill.[2] Approximately eight months following this meeting Dr. Robert Murphy, a colleague of petitioner's, told the Hospital Superintendent that the petitioner had admitted the alleged misconduct to him. On the basis of this information the Hospital Superintendent relieved petitioner of his duties effective June 10, 1977.

Pursuant to petitioner's timely request, the Commission conducted a hearing into the propriety of the subject dismissal on August 10, 1977. From the adverse determination of the Commission petitioner presents the instant petition for review.

Petitioner first contends that there is not substantial evidence to support the Commission's adjudication. In its discussion of the testimony, the Commission stated, "We believe the credible evidence in this case is that of the appointing authority. Our reasonable minds are convinced that the evidence of the appointing authority supports the charges given for removal of [petitioner]." We agree. The following summary by the Commission of the testimony supporting petitioner's removal is indicative:

The testimony shows [petitioner] had a dislike for Dr. Kafrissen [a community physician]. [Petitioner] used vulgar and obscene language in referring to Dr. Kafrissen. [Petitioner] con-

[2] One of those becoming ill, Dr. Gittens, the Superintendent at Retreat State Hospital, did not attend the meeting; his symptoms manifested themselves sometime before the 9:30 a.m. meeting necessitating his early departure from the hospital. It was the theory before the Commission, as verified by petitioner's admission to a colleague, that the drug was placed in the coffee, which all those complaining of sickness admitted consuming. The coffee pot was located in Dr. Gittens' office and the doctor testified that he had drunk some coffee earlier that morning, which may explain the apparent anomaly posed by Dr. Gittens' illness despite his absence from the meeting.

fided to Dr. Murphy that he, the [petitioner], had placed Haldol in the coffee on August 5, 1976. . . . Dr. Murphy wrestled with his conscience and considered his friendship with [petitioner] before revealing this information to the Hospital Superintendent. Testimony of some of those who attended the meeting corroborate by their illness, the [petitioner's] statement. . . .

Under the circumstances we must affirm the Commission's factual findings, supported as they are by substantial evidence. *Henley v. State Civil Service Commission,* 39 Pa. Commonwealth Ct. 286, 395 A.2d 330 (1978).

Petitioner also raises a due process argument alleging he was not sufficiently informed of the charges against him. In this context due process is satisfied when the notice of removal is framed in a manner which enables the employee to discern the nature of the charges and adequately prepare a defense; the certainty of a bill of indictment is not necessary but the notice must inform the employee with reasonable certainty the substance of the charges against him. *Benjamin v. State Civil Service Commission,* 17 Pa. Commonwealth Ct. 427, 332 A.2d 585 (1975).

In the first letter from the Hospital Superintendent dated June 6, 1977, petitioner was generally informed of the charges against him without any specification as to date, time, and place of the alleged misconduct. By letter dated August 5, 1977, the material deficiencies in the previous notice were corrected although the date of the relevant clinical meeting was *improperly* noted as August 6 rather than August 5, 1976. The appropriate date was furnished in a final letter dated August 9, 1977.

We might be concerned if the error in identifying the meeting date appeared to be of some importance to the preparation of petitioner's defense, especially

in light of its eleventh hour correction. We learn from the record, however, that the clinical meetings of which August 5, 1976 was one were regularly scheduled once-a-week gatherings making the error in dates readily apparent to petitioner. It was further revealed, in the testimony of the Hospital Superintendent, that a discussion with petitioner concerning the charges had been held well before the Commission's hearing. Our review of the record confirms the Commission's conclusion that petitioner "was given specific and definite notice of the event that was the cause of his removal. [Petitioner] had ample opportunity to prepare his defense and answer the charges given for his removal."

Accordingly, we will enter the following

ORDER

AND Now, June 29, 1979, the order of the State Civil Service Commission at Appeal No. 2229 dated January 10, 1978, is hereby affirmed.